UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAJAY RAI,

        Plaintiff,        CASE NUMBER: 09-13194
                                   HONORABLE VICTORIA A. ROBERTS

v.

ERNST & YOUNG, LLP,

        Defendant.
                                      /

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**I.    INTRODUCTION**

Plaintiff Sajay Rai sued his former employer, Ernst & Young, LLP ("E&Y"), pursuant to Title VII of the Civil Rights Act of 1964, 28 U.S.C. § 2000(e) et seq., and Michigan's Elliot Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 et seq.  E&Y moves to dismiss, or, in the alternative, to stay proceedings pending arbitration.  (Dkt. #7.)

E&Y's motion is **GRANTED**.

**II.    BACKGROUND**

Plaintiff is a Michigan resident of Indian national origin.  When he joined E&Y in August 1999, Plaintiff signed the firm's Agreement of Partners and Principals ("the Partnership Agreement").  E&Y revised this Partnership Agreement on several occasions; Plaintiff signed each version, unless he was not required to do so.  Plaintiff did not sign the 2009 version of the Partnership Agreement.  E&Y emphasizes that he was not required to sign it, and that he was bound by it nevertheless.  Plaintiff does not

appear to dispute that he was bound.

Section 17 of the Partnership Agreement is titled "Dispute Resolution" (hereinafter § 17). It describes a two-step procedure, combining mediation and arbitration, which is the exclusive method for resolving all disputes between E&Y and its employees. Section 17(d) contains the Arbitration Agreement. Besides setting forth arbitration procedures, §17(d) includes a Delegation Clause:

> Any issue concerning the extent to which any Dispute is subject to arbitration, or the formation, applicability, interpretation or enforceability of the provisions of this Section 17, including any claim or contention that all or any part of this Agreement is void or voidable, will be governed by the Federal Arbitration Act and will be resolved by the arbitrators.

(§ 17(d)(ii).)

E&Y terminated Plaintiff's employment in March 2009. Plaintiff says it was because of his national origin. Initially, Plaintiff requested voluntary mediation to resolve the matter. When discussions reached an impasse, Plaintiff filed this lawsuit instead of proceeding to binding arbitration. On November 3, 2009, E&Y moved to dismiss or stay the action pending arbitration.

On June 21, 2010, the Supreme Court issued its opinion in *Rent-A-Center, W., Inc., v. Jackson*, ___ U.S. ___, 130 S. Ct. 2772 (2010). E&Y subsequently filed a letter asking the Court to consider *Rent-A-Center* in ruling on its motion. Plaintiff did not answer E&Y's letter or otherwise address *Rent-A-Center*.

## III.    ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., "establishes a statutory scheme for effectuating the federal policy of encouraging arbitration as a less costly and less complicated alternative to litigation." *Morgan v. Smith Barney, Harris Upham &*

2

*Co.*, 729 F.2d 1163, 1165 (8th Cir. 1984). Under § 2 of the FAA,

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Furthermore, the FAA provides that if, in the course of a judicial proceeding, an issue arises that is referable to arbitration under a written agreement between the parties,

> the court . . . , upon being satisfied that the issue involved in such suit or proceeding is referable . . . , shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . , providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. *See also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (the FAA leaves district courts "no place for the exercise of discretion" in compelling arbitration of pendent arbitrable claims).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (*quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Therefore, "[w]hile the courts must respect 'the liberal federal policy favoring arbitration agreements,' . . . the underlying question of whether the parties agreed to arbitrate is to be 'decided by the court, not the arbitrator.'" *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *AT&T Techs.*, 475 U.S. at 649) (other citations omitted).

To determine if a dispute is arbitrable, a court must analyze: (1) whether "a valid agreement to arbitrate exists between the parties," and (2) whether "the specific dispute

3

falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (*citing AT&T Techs.*, 475 U.S. at 649). Here, the second prong is easily met, since the issue in dispute falls clearly within the scope of arbitration. However, Plaintiff contests the validity of the Arbitration Agreement itself.

A challenge to an agreement to arbitrate can take two forms. The first type seeks to invalidate the entire contract between the parties. Under well-established law, "attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (*citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)). The second type specifically targets the arbitration clause, by arguing, for example, that the party's consent to arbitrate was fraudulently induced. These are challenges for the courts to resolve. *Prima Paint*, 388 U.S. at 403-04; *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006); *Moran v. Svete*, 366 Fed. Appx. 624, 630 (6th Cir. 2010) (unpublished).

Plaintiff's challenge is of the second order. He argues that the Arbitration Agreement is void and unenforceable, because it denies him substantive remedies afforded by state and federal statutes, and mandates unfair arbitration procedures. E&Y responds that, under the Delegation Clause of § 17(d)(ii), these questions are to be resolved through arbitration. However, Plaintiff argues that he has the right to have a court decide whether the Arbitration Agreement is valid and enforceable.

The Supreme Court resolved this very dispute in *Rent-A-Center*, 130 S. Ct. at 2772. In *Rent-A-Center*, an employment contract required arbitrating all disputes arising from the employment relationship. *Id.* at 2775. The contract also contained a

4

delegation clause, stating: "[t]he Arbitrator, and not any federal state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* The plaintiff/employee ("Jackson") opposed arbitration on grounds that the agreement was unenforceable and unconscionable under state law; the employer ("Rent-A-Center") argued that the unconscionability claim was not properly before the court, because the delegation clause explicitly left that determination to the arbitrator. *Id.*

The Supreme Court started from the rule that a "written provision . . . to settle by arbitration a controversy" is "valid, irrevocable, and enforceable" regardless of the validity of the contract in which it is contained. *Id.* at 2778 (*quoting* 9 U.S.C. § 2). In other words, the Court said, "[a]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Id.* (*quoting Buckeye*, 546 U.S. at 445 (other citation omitted)). Applying this rule to the agreement in *Rent-A-Center*, the Court held:

> Here, the "written provision . . . to settle by arbitration a controversy," 9 U.S.C. § 2, that Rent-A-Center asks us to enforce is the delegation provision -- the provision that gave the arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement." The "remainder of the contract," [*Buckeye*, 546 U.S. at 445], is the rest of the agreement to arbitrate claims arising out of Jackson's employment with Rent-A-Center. . . . Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.

*Id.* at 2779 (internal citations and footnote omitted).

Applying this directive, the Court analyzed Jackson's unconscionability claims

5

one by one. Jackson argued that: (1) the agreement was one-sided, because it singled out for arbitration those claims most likely to be brought by employees, not the ones the employer was most likely to assert; (2) the arrangement for splitting the arbitrator's fee was unfair; and (3) limitations on discovery prejudiced his ability to prosecute his case. *Id.* at 2780. The Court noted that these challenges could be directed at the agreement to arbitrate as a whole, or at the delegation provision in particular, by arguing that "these common procedures as applied to the delegation provision rendered that provision unconscionable." *Id.* (emphasis in original). For example,

> [t]o make [an unconscionability] claim based on discovery procedures, Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable. That would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable. Likewise, the unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination.

*Id.* The Court explained that, if Jackson had targeted the delegation provision specifically, the district court could have been obligated to consider his arguments. *Id.* However, Jackson's claims were directed at the entire arbitration agreement, and therefore, they should be resolved in arbitration. *Id.*

Pre-*Rent-A-Center*, a contract was divided into two parts: (1) the arbitration clause; (2) the rest of the contract. Under this system, courts decided claims that an arbitration clause was invalid or unenforceable. However, claims that the entire contract was invalid were left for arbitration. Therefore, a plaintiff could argue: "these limitations on discovery make it unconscionable to force me to arbitrate my discrimination claim."

6

However, claims that he was fraudulently induced to enter into the contract as a whole were relegated to arbitration.

Post-*Rent-A-Center*, the line has shifted. Now, the same contract, if it contains a delegation clause, is divided into: (1) the delegation clause; (2) the rest of the contract. Under this new system, if the contract contains a delegation clause, courts decide only if the delegation clause is valid and enforceable. Arbitrators decide claims relating to the underlying contract, plus those related to the rest of the arbitration clause. For example, the plaintiff can argue: "these limitations on discovery make it unconscionable to force me to arbitrate my claim that the arbitration agreement is void and unenforceable." However, he can no longer argue: "these limitations on discovery make it unconscionable to force me to arbitrate my discrimination claim."

As prescribed by *Rent-A-Center*, this Court must examine Plaintiff's claims to see if he challenges the Arbitration Agreement as a whole, or the Delegation Clause itself. Plaintiff argues that:

1. The Arbitration Agreement improperly denies his right to obtain remedies guaranteed by statute, such as damages for emotional and mental distress, front pay, punitive damages, equitable relief and attorneys' fees (§ 17(d)(iv));
2. The Arbitration Agreement limits his right to meaningfully appeal the arbitration result, because it does not require issuance of a written opinion explaining the arbitrators' reasoning, unless both parties so request (§ 17(d)(iv));
3. The Arbitration Agreement denies his procedural rights, because it -
    (a) Does not give adequate notice that employees waive their right to pursue claims under federal or state civil rights laws (§ 17(a));
    (b) Compels participation in non-binding mediation as a precursor to arbitration (§ 17(b));
    (c) Does not guarantee that claims will be heard by neutral arbitrators, and prevents selection of arbitrators with expertise in employment discrimination claims (§ 17(d)(i));
    (d) Unfairly prohibits any discovery without a showing of substantial need

  and prior authorization by the arbitrators, thus hindering Plaintiff's ability to prove his claim and prevail on appeal (§ 17(d)(iii)); and
4. The Arbitration Agreement requires the parties to split arbitration costs, significantly increasing his financial burden compared to litigation in court, and effectively precluding his ability to vindicate his rights (§ 17(d)(v)).

  Most of these claims concern provisions of the Arbitration Agreement that are entirely distinct from the Delegation Clause.  For instance, remedy provisions are relevant to the arbitration of the underlying employment dispute, meaning that they can affect Plaintiff's award.  However, they do not affect Plaintiff's ability to arbitrate whether the Arbitration Agreement is valid and enforceable.  The same is true for provisions relating to notice, mediation, and choosing arbitrators.  Since these arguments are not directed against the Delegation Clause itself, they must be referred to arbitration.

  The only claims which can be applied to the Delegation Clause are those concerning limitations on discovery, cost-splitting measures, and appellate rights. However, Plaintiff argues that these provisions make it unconscionable to arbitrate his discrimination claim, not that they make it unconscionable to arbitrate the validity and enforceability of the Arbitration Agreement.

  Specifically, Plaintiff argues that discovery restrictions are unconscionable because "[e]mployment disputes, especially those involving allegations of illegal discrimination and retaliation, are fact intensive," and "[t]he vast majority of [information Plaintiff needs to litigate his claim] is in the custody and control of" E&Y.  (Pl.'s Resp. 15.)  Plaintiff's argument is that limiting discovery makes it difficult to litigate his discrimination claim, not that it hinders his ability to prove the Arbitration Agreement is void and unenforceable.  Likewise, Plaintiff argues that fee splitting makes it too

8

expensive to litigate his entire discrimination claim, not the limited question of whether the Arbitration Agreement is valid and enforceable. (*See* Pl.'s Resp. 19 ("The fees and costs of arbitration would deter a similarly situated litigant from seeking vindication of his or her statutory rights.").)

Furthermore, the Court notes that, even if Plaintiff reformulated his argument according to *Rent-A-Center*, it is very unlikely he would succeed. As the Supreme Court readily admits, *Rent-A-Center* makes it significantly more difficult to challenge discovery restrictions and cost-splitting provisions as unconscionable. 130 S. Ct. at 2780.

Plaintiff's last unconscionability claim is that, because the arbitrators are not required to issue a written opinion, he will be unable to meaningfully appeal the arbitral award. This challenge fails for two reasons. First, the argument deals only with Plaintiff's ability to appeal the final ruling on his discrimination claim, not an intermediate decision on validity or enforceability of the Arbitration Agreement. Second, and most important, the Sixth Circuit holds that "arbitrators have no obligation to issue a written decision to justify their awards." *Mich. Family Res., Inc. v. SEIU Local 517M*, 475 F.3d 746, 755 (6th Cir.), *cert. denied*, 551 U.S. 1132 (2007) (*citing United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) "Arbitrators have no obligation to the court to give their reasons for an award."). Other courts agree. *See Butler Mfg. Co. v. USW*, 336 F.3d 629, 636 (7th Cir. Ill. 2003) ("Arbitrators are normally not required to write any opinion at all") (*citing Enter. Wheel*, 363 U.S. at 598); *Vitarroz Corp. v. G. Willi Food Int'l Ltd.*, 637 F. Supp. 2d 238, 247 (D.N.J. 2009) (same) (*citing Enter. Wheel*, 363 U.S. at 598; *V.I. Nursing Ass'n Bargaining Unit v. Schneider*, 668

F.2d 221, 224 (3d Cir. 1981)).

Since Plaintiff fails to show that the provisions of the Arbitration Agreement make it unconscionable to arbitrate its validity and enforceability, his challenge fails.

## IV. CONCLUSION

The Court **GRANTS** Ernst & Young's motion. Plaintiff's complaint is **DISMISSED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 8, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 8, 2010.

s/Carol A. Pinegar
Deputy Clerk